UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

EDDIE TARAFA,

                              Plaintiff,          9:17-CV-0320
                                                        (BKS/DJS)
    v.

MIKE WALKER; et al.,

                              Defendants.

---

APPEARANCES:

EDDIE TARAFA
08-A-0632
Plaintiff, pro se
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589

BRENDA K. SANNES
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

The Clerk has sent to the Court for review a civil rights complaint brought pro se by plaintiff Eddie Tarafa. Dkt. No. 1 ("Compl."). Plaintiff, who is presently confined at Shawangunk Correctional Facility, has not paid the filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 5 ("IFP Application").

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v.*

*Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of plaintiff's IFP Application, the Court finds that he has demonstrated economic need. Plaintiff has also filed the inmate authorization required in the Northern District of New York. Dkt. No. 3. As a result, the Court grants plaintiff's IFP Application.

### III. SUFFICIENCY OF THE COMPLAINT

#### A. Standard of Review

In light of the fact that plaintiff was granted leave to commence this action in forma pauperis, and because he seeks relief from an officer or employee of a governmental entity, the Court must now consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in

---

[1] Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints). Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, . . ." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.[2]

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet

---

[2] "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241 (TJM/RFT), 2008 WL 268215, at *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial . . . resources[.]" *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Id.* at 325.

3

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Summary of the Complaint

Plaintiff asserts allegations of wrongdoing arising out of his confinement at Shawangunk Correctional Facility ("Shawangunk C.F.") in 2014. *See generally* Compl. The following facts are set forth as alleged by plaintiff in the complaint.

On approximately May 19, 2014, plaintiff was participating in a visit with his wife and daughter in accordance with the Family Reunion Program ("FRP") at Shawangunk C.F. Compl. at 11. At approximately 4:15 p.m., inmate Ramos (another FRP participant), brought a piece of cheesecake to plaintiff's trailer. *Id*. Inmate Ramos handed the cheesecake to plaintiff's wife "at the front door in the porch area of the trailer" and then returned to his trailer. *Id*. A short time later, Sgt. Lellet spoke to plaintiff and to inmate Ramos and warned plaintiff "not to pass anything." *Id*.

The following day, defendant Sgt. Malloy terminated plaintiff's visit and placed him on keeplock status. Compl. at 12.[3] Sgt. Malloy issued an inmate misbehavior report ("IMR") to plaintiff charging him with violating Rule 113.15 (Unauthorized Exchange) and Rule 180.13

---

[3] Defendants Malloy and Walker are identified in the caption and in the "Parties" section of the complaint by their current ranks of Lieutenant and Deputy Superintendent of Administration, respectively. Compl. at 1-2. Defendants are referred to in the body of the complaint as "Sgt." Malloy and "Hearing Officer" Walker, and will be referred to as such throughout this Decision and Order.

(Violating FRP Guidelines). *Id*.; *see* Dkt. No. 1-1 at 20 (IMR).[4]  As set forth in the IMR, inmate Ramos was observed exiting plaintiff's trailer at the time he delivered the cheesecake. *Id*.[5]

A Tier III disciplinary hearing was conducted by defendant Hearing Officer Walker commencing on May 23, 2014.  Compl. at 13.  Plaintiff was denied the ability to call one of his witnesses and was denied access to video of the FRP area; plaintiff also contends that his employee assistant was ineffective and that Hearing Officer Walker was not fair and impartial.  *Id*. at 5, 36-37, 44-47.  At the conclusion of the hearing on June 18, 2014, Hearing Officer Walker found plaintiff guilty of both rule violations.  *Id*. at 28.  Plaintiff was sanctioned with thirty days pre-hearing keeplock confinement, and sixty days keeplock confinement and loss of packages, commissary, phone, special events, and honor visiting privileges; the post-hearing sanctions were suspended and deferred for 180 days.  *Id*.; *see* Dkt. No. 1-2 at 56-57 (Supt. Hearing Disposition).[6]  As a result of this disciplinary determination, plaintiff was excluded from the FRP for one year.  Compl. at 28; *see* Dkt. No. 1-2 at 68 (Letter denying plaintiff's appeal of FRP determination).

The disciplinary determinations were affirmed on administrative appeal in August 2014.  Compl. at 28; *see* Dkt. No. 1-1 at 8 (Review of Supt. Hearing).  In October 2014,

---

[4] As set forth in the complaint, FRP guidelines permit participants to visit with other participants outside of their assigned FRP units during daylight hours.  *See* Compl. at 17 (citing FRP Facility Operation Manual § 3.501(j)(1)).  Violation of this provision "will cause immediate termination of visit."  *Id*.

[5] Inmate Ramos also received an inmate misbehavior report; Ramos was charged with violating Rule 109.10 (Out of Place) and Rule 180.13 (Violating FRP Guidelines).  Compl. at 16.

[6] Although plaintiff states that he was also sanctioned with a one year loss of FRP participation, *see* Compl. at 28, this "penalty" is not listed on the Hearing Disposition record.  *See* Dkt. No. 1-2 at 56-57 (Supt. Hearing Disposition).  Rather, it appears that under the FRP Guidelines, a disciplinary infraction may be grounds for removal from the FRP.  *See* Dkt. No. 1-2 at 68 (Letter from Dir., Ministerial, Family and Volunteer Services denying plaintiff's appeal of FRP determination).

5

plaintiff commenced a state court proceeding pursuant to New York CPLR Article 78. *Id*. at 30-31. In August 2015, while the Article 78 proceeding was pending, plaintiff was notified that the Tier III proceeding had been reversed and expunged from his record. *Id*. at 31; *see* Dkt. No. 1-2 at 59 (Review of Supt. Hearing).[7] Notwithstanding the administrative reversal of the disciplinary findings, plaintiff was not allowed to return to the FRP until November 2015. *Id*. at 33.[8]

Construed liberally,[9] the complaint asserts the following claims for the violation of plaintiff's federal constitutional rights: (1) the IMR issued by Sgt. Malloy was false and unsubstantiated; (2) plaintiff was denied due process at the disciplinary hearing conducted by Hearing Officer Walker; (3) plaintiff was improperly excluded from the FRP; and (4) plaintiff was falsely imprisoned and maliciously prosecuted. Compl. at 4.[10] Plaintiff seeks an award

---

[7] Plaintiff mistakenly states in the complaint that this notification was received in August 2016, rather than August 2015. *See* Compl. at 31. In December 2015, the Appellate Division, Third Department, concluded that plaintiff had received "all of the relief to which he is entitled," and dismissed the petition as moot. *See* Dkt. No. 1-1 at 18-19 (Memorandum and Judgment).

[8] Inmate Ramos was allowed to return to the FRP in October 2014. Compl. at 33.

[9] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

[10] To the extent plaintiff asserts claims arising under New York State law, this Court's jurisdiction over those claims is supplemental because there is no diversity of citizenship between the parties. *See* 28 U.S.C. § 1367(c)(3); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 304 (2d Cir. 2003). Pursuant to 28 U.S.C. § 1367(c), a court "may decline to exercise supplemental jurisdiction[.]" *See Danielak v. City of N.Y.*, No. 02-CV-2349, 2005 WL 2347095, at *16 (E.D.N.Y. Sept. 26, 2005), *aff'd*, 209 Fed. App'x 55 (2d Cir. 2006). "It is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006). For the reasons set forth below, plaintiff's Section 1983 claims are dismissed for failure to state a claim, and the Court therefore declines to exercise jurisdiction over state law claims asserted against the defendants.

of damages against the defendants. *Id*. at 6. For a complete statement of plaintiff's claims, reference is made to the complaint.

### C. Analysis

Plaintiff seeks relief for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983); *see also Myers v. Wollowitz,* No. 95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "[Section 1983] is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights."). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993). The personal involvement of a defendant is a prerequisite for the assessment of liability in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to these claims. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

#### 1. False Inmate Misbehavior Report

Standing alone, the allegation that a false misbehavior report has been filed against an inmate is not sufficient to establish a denial of due process. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). As long as prison officials grant the inmate a hearing and an opportunity to be heard, the filing of unfounded charges does not give rise to a per se constitutional violation under Section 1983.

7

*Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988).[11]  In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing."  *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).

Plaintiff's contention that the IMR issued to him by Sgt. Malloy did not comply with the provisions of DOCCS Directive 4932 (Standards Behavior & Allowances), *see* Compl. at 5, 34-35, does not warrant a different result.[12]  "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."  *Cusamano v. Sobek*, 604 F. Supp.2d 416, 482 (N.D.N.Y. 2009) (Suddaby, J.) (collecting cases).  "Furthermore, the violation of a DOCS Directive, alone, is not even a violation of a New York State Law or regulation (much less of 42 U.S.C. § 1983)."  *Cabassa v. Gummerson*, No. 9:01-CV-1039 (DNH/GHL), 2008 WL 4416411, at *6 n. 24 (N.D.N.Y. Sept. 24, 2008) (Hurd, J.) (internal quotation marks and citation omitted); *see also Dillhunt v. Theriault*, No. 9:07-CV-0412 (GTS/DEP), 2009 WL 4985477, at *11 (N.D.N.Y. Dec. 15, 2009) ("Even crediting [the state] court's implicit finding that defendants opened plaintiff's mail in violation of DOCS Directive 4422, that violation alone is insufficient to establish a claim under § 1983.").

In light of the foregoing, plaintiff's allegations that Sgt. Malloy issued an IMR which was unsubstantiated and included false information in violation of DOCCS Directive 4932, even if true, do not give rise to a claim for the violation of plaintiff's due process rights

---

[11] The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more, such as "retaliation against the prisoner for exercising a constitutional right."  *Boddie*, 105 F.3d at 862 (citing *Franco*, 854 F.2d at 588-90).  Plaintiff does not allege that Sgt. Malloy issued the IMR in retaliation for his having engaged in conduct protected under the First Amendment.

[12] According to plaintiff, "the rule violation of unauthorized exchange for the date of 5/20/14 is not the date of the incident which Sgt. Malloy described on the description of incident on the misbehavior report."  Compl. at 34; *see* Dkt. No. 1-1 at 20 (IMR).

8

cognizable in this Section 1983 action. As a result, this claim is dismissed in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### 2. Denial of Due Process at Disciplinary Hearing

To successfully state a Fourteenth Amendment claim for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, inter alia, *Wolff v. McDonnell*, 418 U.S. 539, 563- 67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing, inter alia, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). Under *Wolff* and its progeny, a prisoner is entitled to an "employee assistant" to aid in the preparation for a disciplinary hearing when the inmate is illiterate, confined to restrictive confinement, or unable to grasp the complexity of the issues involved. *See Rodriguez v. Selsky*, No. 07-CV-0432 (LEK/DEP), 2011 WL 1086001, at *8  (N.D.N.Y. Jan. 25, 2011) (quoting *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir.

1993)).[13]

"[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Sealey v. Giltner,* 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).[14]  While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*.  *Colon*, 215 F.3d at 231.[15]  Thus, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that restrictive confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions."  *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir. 2009) (citing *Colon*, 215 F.3d at 231).[16]  The Second Circuit has held that it is the length of the actual punishment that

---

[13] While plaintiff complains that he received inadequate assistance from the employee who served in that role, *see* Compl. at 5, 36, this claim does not survive initial review because this individual was not named as a defendant.

[14] Atypicality in a *Sandin* inquiry is normally a question of law.  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey,* 197 F.3d at 585.

[15] For example, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate.  *Sandin*, 515 U.S. at 485-86.  In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence.  *Id*.

[16] Under "normal" conditions, a prisoner confined in the special housing unit of a New York state prison is "placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling.  Visitors [are] permitted, but the frequency and duration [is] less than in general population.  The number of books allowed in the cell [is] also limited."  *Palmer v. Richards*, 364 F.3d 60, 66 n.3 (2d Cir. 2004).  "Keeplock" is a less restrictive form of disciplinary confinement where the inmate is confined to his own cell for the duration of the disciplinary sanction.

is relevant in determining whether a period of restrictive confinement implicates a cognizable liberty interest, and, not the length of the sentence imposed. *Scott v. Albury*, 156 F.3d 283, 287-88 (2d Cir. 1998) ("we read *Sandin* to require that we look to actual punishment in making this determination.").

Plaintiff claims that he was denied due process at the disciplinary hearing conducted by Hearing Officer Walker. Compl. at 5, 44-47. Plaintiff alleges that his employee assistant was ineffective, he was denied the opportunity to call witnesses and present documentary and video evidence, and the hearing officer was biased. *Id*. While these allegations plausibly suggest that plaintiff was denied procedural due process protections, the Court must consider whether he has alleged facts sufficient to plausibly suggest that he enjoyed a protected liberty interest in the disciplinary proceedings.[17]

As noted, plaintiff was sanctioned with "time served" (thirty days pre-hearing keeplock confinement); additional penalties (sixty days keeplock and loss of privileges) imposed by Hearing Officer Walker were suspended and deferred for one hundred eighty days. Dkt. No. 1-2 at 37 (Disciplinary Hearing Transcript); Dkt. No. 1-2 at 56-57 (Supt. Hearing Disposition).[18] The period of plaintiff's confinement relevant to the Court's *Sandin* analysis appears to be the thirty days he spent in keeplock prior to the disciplinary hearing.[19] In light

---

*Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

[17] As discussed above, the fact that the conduct complained of may have contravened DOCCS Directives or other state law is not constitutionally significant. *See, e.g.*, *Cusamano*, 604 F. Supp.2d at 482.

[18] According to plaintiff, he experienced the 60 days loss of privileges. *See* Compl. at 48. Plaintiff does not claim to have served more than thirty days of keeplock confinement. See *id*. at 28, 48.

[19] The Court notes, however, that even if plaintiff served the additional sixty days of keeplock confinement and the periods were aggregated, the Court finds that plaintiff has not alleged facts sufficient to plausibly suggest that this confinement was atypical or significant for purposes of *Sandin*. Plaintiff is of course free to provide additional facts regarding this confinement in an amended complaint.

11

of plaintiff's relatively brief confinement on keeplock status, and because he does not allege that the conditions of that confinement were atypical or unusually severe, the Court finds that he has not demonstrated a liberty interest in being free from that confinement. *See, e.g., Crenshaw v. Sciandra*, 766 F. Supp. 2d 478, 482 (W.D.N.Y. 2011) ("Because plaintiff spent a 'relatively brief' period of 94 days in SHU, his due process rights are not implicated, absent a showing that the conditions of his confinement were unusually severe.").

As a result, plaintiff's claim that he was disciplined by Hearing Officer Walker in violation of his rights protected by the Due Process Clause is dismissed without prejudice for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### 3. Exclusion from the FRP

It is well-established that inmates do not have a liberty interest in internal classifications or eligibility for particular programs which is protected by the Due Process Clause of the Fourteenth Amendment. *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). Indeed the Second Circuit has specifically recognized that under New York law "there is no liberty interest in participating in the [FRP]." *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004) (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) and *Hernandez v. Coughlin*, 18 F.3d 133, 136-38 (2d Cir. 1994)); *see also Doe v. Coughlin*, 71 N.Y.2d 48, 56 (1987) (holding that the creation of the FRP did not create a liberty interest "because, given the program's discretionary nature, inmates do not have a legitimate expectation that they will participate in it.").

As a result, neither plaintiff's exclusion from the FRP following the disciplinary hearing

nor the decision not to readmit him to that program prior to November 2015 gives rise to a claim for the violation of his rights protected under the Due Process Clause. *See Dorsey v. Fischer*, No. 9:09-CV-1011 (GLS/DEP), 2010 WL 2008966, at *9 (N.D.N.Y. May 19, 2010) (plaintiff's claim that he was improperly denied entry into the FRP not cognizable under Section 1983); *see also Moore v. N.Y. State Dep't of Corr. Servs.*, 26 Fed. App'x 32, 33 (2d Cir. 2001) (summary order) (dismissing claim that DOCS' refusal to allow plaintiff to participate in the FRP, notwithstanding his previous participation in the program for two years, violated his constitutional rights).[20]

The Court has also considered whether plaintiff's claim that his lengthy exclusion from the FRP violated his rights protected by the Equal Protection Clause of the Fourteenth survives initial review, and concludes that it does not. The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

In order to state a "class of one" claim, a plaintiff must show that he "has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Chestnut Ridge*

---

[20] This claim is also subject to dismissal because plaintiff has not alleged facts which plausibly suggest that either defendant was personally involved in the determinations made regarding his participation in the FRP. Although plaintiff contends that his exclusion from FRP was a disciplinary sanction imposed by Hearing Officer Walker, *see* Compl. at 28, the exhibits submitted in support of the complaint do not support that assertion and indeed, clearly indicate that FRP determinations are made by DOCCS Office of Ministerial, Family and Volunteer Services. *See* Dkt. No. 1-2 at 56-57 (Supt. Hearing Disposition); Dkt. No. 1-2 at 68 (Letter from Dir. of Ministerial, Family and Volunteer Services denying plaintiff's appeal of FRP determination).

13

*Assocs., LLC v. Vill. of Chestnut Ridge*, 194 Fed. App'x 76, 77 (2d Cir. 2006) (summary order). The Second Circuit has "held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).[21] "Generally, whether parties are similarly situated is a fact-intensive inquiry." *Id*. "[A]t the pleading stage, a complaint alleging a 'class of one' Equal Protection violation need not identify actual instances where others have been treated differently, and . . . it is sufficient to make the more general allegation that similarly-situated people have been treated differently, just as the Complaint does here." *Cohn v. New Paltz Cent. Sch. Dist.*, 171 Fed. App'x 877, 879 (2d Cir. 2006) (summary order).

Here, plaintiff asserts that he and inmate Ramos were "similarly situated" with regard to participation in the FRP. Compl. at 42-44. As alleged, following the incident on May 19, 2014 when Ramos delivered cheesecake to plaintiff's trailer, both inmates had their visits terminated and were placed on keeplock status. *Id*. at 15; *see* Dkt. No. 1-2 at 88-89 (Ramos Statement). Disciplinary charges were placed against both inmates, and both inmates were found guilty and subjected to the same sanctions. *Id*. at 42; *see* Dkt. No. 1-2 at 88-89 (Ramos Statement).[22] In addition, the disciplinary determinations resulted in both inmates being excluded from the FRP in accordance with DOCCS Directive 4500. Compl. at 42; *see*

---

[21] In order to succeed on a "class of one" claim, a plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [that] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Clubside, Inc.*, 468 F.3d at 159.

[22] Ramos was charged with violating Rule 109.10 (Out of Place) and Rule 180.13 (Violating FRP Guidelines). Compl. at 16; *see* Dkt. No. 1-2 at 88-89 (Ramos Statement).

Dkt. No. 1-2 at 68 (Letter to plaintiff from Dir., Ministerial, Family and Volunteer Services).[23] Notwithstanding these similarities, inmate Ramos was readmitted to the FRP in October 2014, more than one year before plaintiff.[24]

Upon review, and even assuming that plaintiff has alleged facts sufficient to plausibly suggest a cognizable "class of one" claim under the Equal Protection Clause, because plaintiff has not alleged facts which plausibly suggest that either defendant was personally involved in the decisions made regarding his participation in the FRP, this claim is subject to dismissal for failure to state a claim upon which relief may be granted.

Based upon the foregoing, plaintiff's claims that his exclusion from the FRP violated his rights protected under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1).

### 4. False Imprisonment and Malicious Prosecution

A Section 1983 claim of false arrest or imprisonment "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Lennon v. Miller*, 66 F.3d 416, 423 n. 2 (2d Cir.

---

[23] Plaintiff references DOCCS Directive 4500 § 11.B.4. Compl. at 42. The portions of the Directive submitted as an exhibit to the complaint do not include this provision, which plaintiff describes as imposing a one year suspension from the FRP for inmates found guilty of violating the FRP Guidelines. *Id*.; *see* Dkt. No. 1-2 at 82-86. DOCCS Directive 4500, as amended 1/5/16, provides in relevant part that "an inmate participant found in violation of the FRP regulations/standards will have their eligibility suspended;" a Tier III violation results in a "12 month suspension." DOCCS Directive 4500, IV.B.7.

[24] Determinations regarding inmate participation in the FRP are made by the Director of Ministerial, Family and Volunteer Services (or their designee). *See* DOCCS Directive 4500. Evaluation of whether or not an inmate should be afforded the opportunity to participate in the FRP is "committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *Hernandez*, 18 F.3d at 138 (citation omitted); *see Gordon v. Woodbridge*, 481 F. Supp.2d 263, 272 (S.D.N.Y. 2007) (noting that the FRP selection process involves "highly discretionary and subjective considerations.").

1995).[25] A Section 1983 claim of malicious prosecution requires a plaintiff to demonstrate, among other elements, that the prosecution resulted in "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000).[26] Case law is clear that "[a] plaintiff does not have a claim for false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he already is in custody on other charges, because there is no deprivation of liberty interests." *Doe v. Selsky*, 841 F. Supp.2d 730, 732 (W.D.N.Y. 2012) (dismissing claims arising out of prison disciplinary proceedings); *see also Walker v. Sankhi*, 494 Fed. App'x 140, 142-43 (2d Cir. 2012) (summary order) ("[Plaintiff's] federal false arrest and malicious prosecution claims must fail because . . . [plaintiff] could not have suffered a deprivation of liberty as a result of [one] burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted."); *Dillhunt v. Theriault*, No. 9:07-CV-412 (GTS/DEP), 2009 WL 4985477, at *16 (N.D.N.Y. Dec. 15, 2009) ("Where a prisoner's period of incarceration is not impacted by disciplinary proceedings . . . that inmate

---

[25] "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Jackson v. City of New York*, 939 F. Supp.2d 235, 248 (E.D.N.Y. 2013).

[26] "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Id.* at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). In the context of prison disciplinary proceeding, this claim "is analyzed under the Fourteenth Amendment." *Dillhunt v. Theriault*, No. 9:07-CV-412, 2009 WL 4985477, at *16 (N.D.N.Y. Dec. 15, 2009) (citing *Wolff v. McDonnell*, 418 U.S. 539, 553-54 (1974)).

has no claim for malicious prosecution under section 1983").[27]

Here, plaintiff alleges that he was subjected to "illegal and unlawful confinement" and deprived of privileges without his consent, that "Defendant intended to confine[ ] him," that he was conscious of the confinement and deprivation of privileges, and that the confinement and deprivations were not "otherwise privileged." Compl. at 4, 48. More specifically, plaintiff claims that as a result of the IMR and subsequent disciplinary hearing, he was subjected to thirty days of keeplock confinement, loss of privileges for sixty days, and exclusion from the FRP for one year. *Id*. at 47-50. Construed liberally, plaintiff also asserts a malicious prosecution claim against Hearing Officer Walker, claiming that he conducted the disciplinary hearing (which was subsequently reversed) without affording plaintiff due process. *Id*. at 49-51.

Upon review, because plaintiff was in DOCCS custody at all times relevant to these claims, and because there is no basis in the record upon which the Court could conclude that his period of incarceration was impacted by the disciplinary proceedings (or the FRP determinations), plaintiff's claims of false imprisonment and malicious prosecution are not cognizable in this Section 1983 action. As a result, these claims are dismissed without prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

## IV. OPPORTUNITY TO FILE AN AMENDED COMPLAINT

---

[27] New York law recognizes a tort of "wrongful confinement" of an inmate within solitary confinement or keeplock. *See McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (affirming dismissal of plaintiff's claim under the Federal Tort Claims Act because the "tort of wrongful confinement lacks a private analogue."). To recover for wrongful confinement, a prisoner must demonstrate that "he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process." *Willey v. Kirkpatrick*, 801 F.3d 51, 71 (2d Cir. 2015) (summary order) (quoting *Gittens v. State*, 504 N.Y.S.2d 969, 972 (N.Y. Ct. Cl. 1986)). As discussed above, *see* note 10, because plaintiff's federal claims are dismissed the Court declines to exercise jurisdiction over state law claims asserted against the defendants.

The Second Circuit has held that a district court "should not dismiss [a pro se plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999) (internal quotation omitted). Although the complaint does not necessarily indicate that plaintiff might be able to state a valid claim, the Court will nonetheless give him an opportunity to present a proposed amended complaint.

Any amended complaint submitted by plaintiff in response to this Decision and Order must set forth a short and plain statement of the facts he relies on in support of his claims that specific individuals named as defendants in that pleading engaged in acts of misconduct or wrongdoing which violated his constitutional rights. Plaintiff's amended complaint, which shall supersede and replace in its entirety the original complaint, must be a complete pleading which sets forth all of the claims that plaintiff wants this Court to consider as a basis for awarding relief herein.

Plaintiff is advised that his failure to file an amended complaint within thirty (30) days of the filing date of this Decision and Order will result in dismissal of this action without prejudice without further order of the Court.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 5) is **GRANTED**;[28] and it is further

**ORDERED** that the Clerk provide the superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3),

---

[28] Although his in forma pauperis application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the complaint fails to state one or more claims for the violation of plaintiff's constitutional rights cognizable under Section 1983 and is **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that plaintiff's state law claims are **DISMISSED without prejudice to refiling in state court** within the time period established by 28 U.S.C. § 1367(d); and it is further

**ORDERED** that if plaintiff wishes to proceed with this action he must file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order; and it is further

**ORDERED** that upon the filing of an amended complaint as directed above, the Clerk shall return the file to this Court for review; and it is further

**ORDERED** that in the event plaintiff fails to file a signed amended complaint **within thirty (30) days** of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) due to plaintiff's failure to state a claim upon which relief can be granted and to comply with the terms of this Decision and Order, without further order of this Court; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff; and it is further

**ORDERED** that the Clerk provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**IT IS SO ORDERED.**

Dated: May 24, 2017
       Syracuse, NY

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge